# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

Kenny Whitmore #86468
Plaintiff

VS.

Robert Butler, Gail Smothers, and Brian Meyers

COMPLAINT

Jury Trial Demanded

## Preliminary Statement

This is a §1983 action filed by Kenny Whitmore, a state prisoner, alleging violation of his constitutional rights and seeking monetary damages. The Plaintiff request a trial by Jury.

## Jurisdiction

1.) This is a Civil Rights action under 42 U.S.C. §1983. This Court has jurisdiction under 28 U.S.C. §1343(3). Plaintiff also invokes the Pendent Jurisparties.

2.) The Plaintiff Kenny Whitmore is, and was incarcerated at the La. State Prison during all events described in this complaint.

3.) Defendant Robert Butler is an assistant warden at the LA. State Prison. During all events described in this complaint, he was the warden overseeing C.C.R./R.C., which is where

1.

IN THE
United States District Court
Middle District of Louisiana

Kenny Whitmore

vs.

Robert Butler, Gail Smothers, and Brian Meyers

Declaration of Perry M. Grant

Civil Action No.

I, Perry M. Grant #128943, hereby declare that in July, 2010, I was housed in the RC/CCR. Upper-C-Tier housing unit at the LA. State Prison. That in July, 2010 I was placed in full restraints on Upper-C-Tier (waist chain with handcuffs attached to it, and leg restraints), and was then let out of my cell to be escorted to the recreation yard. When I got to the Upper C&D-Tier Lobby, I had to pass through the metal security door to the connecting hallway. While going through this door the chain from my leg restraints slipped into the crack of the metal plate right beneath that door, causing me to

1.

stumble. The Tier SGT. Johnson said he would report this to LT. Brian Meyers as I, myself done when he made Tier rounds that day. I also told Robert Butler who is the Assistant Warden of RC/CCR. The next day while out on the downstairs exercise yard when he came out there, Warden Butler said, he was aware of the incident, and the matter would be taken care of.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 20th of September, 2010.

_____
(signature)

2.

The events occured. He was the highest ranking direct supervisor at that location. It was his duty to ensure that all action and service were performed properly. He is being sued in his individual capacity.

4.) Defendant Gail Smothers is a correctional officer at the La. State Prison. During all events described in this complaint, she was the Lieutenant on one day shift at CCR/RC. Which is where event occurred. It was her direct responsibility to ensure that all action and service were performed properly during her shift. She is being sued in her individual capacity.

5.) Defendant Brian Meyers, is a correctional officer at the La. State Prison. During all events described in this complaint, he was the Lieutenant on the day shift opposite of defendant Gail Smothers at C.C.R./R.C. which is where the events occurred. It was his direct responsibility to ensure that all actions and services were performed properly during his shift. He is being sued in his individual capacity.

6.) All defendants have acted and continue to act, under the color of state law at all times relevant to this complaint.

2.

FACTS.

7.) At approximately 9:15 a.m on August 5, 2010 Plaintiff was placed in full restraints, which consists of a waist-chain with handcuffs attached to it and leg restraints. This was done in order to escort Plaintiff from his cell to the recreation yard.

8.) After being placed in restraints Plaintiff was let out of his cell and escorted into the upper C. and D. Tier Lobby area by Sgt. Hawkins.

9.) Between the upper C. and D. Tier Lobby and the connecting hallway is a metal security door.

10.) The floor directly beneath this door has a jagged hole in the concrete which at some point had a crude metal "plate" placed over it.

11.) The metal plate which had been placed over the hole was not properly sized or secured which resulted in the plate having the ability to move thus causing several sizable cracks around the plate edges.

12.) While being escorted through the doorway the chain of Plaintiff's leg restraints slipped into the hole under the metal plate by passing through one of the cracks around the plate's edges;

3.

13.) Plaintiff's forward momentum caused the chain to pull tight, wedging it securely into the crack.

14.) The combination of Plaintiff's momentum and the inability of the leg restraint chain to exit the crack due to being wedged inside so tightly resulted in the Plaintiff's being forcefully tripped.

15.) When Plaintiff was tripped by the leg restraints his upper body was leaning forward with entire weight being transferred to his left ankle.

16.) The result of this was Plaintiff's left ankle being fractured in two seperate locations.

17.) Plaintiff, along with security office SGT. Davis began hollaring at the escorting officer SGT. Hawkins, who ran back and grabbed Plaintiff in order to hold him up while the leg restraint chain was pried from the crack.

18.) After prying the leg restraint chain from the crack SGT. Hawkins and SGT. Davis as-

4.

sisted Plaintiff back into the C. and D. Tier Lobby area and had him sit down in a chair.

19.) The direct supervisor on duty at that time, LT. Gail Smothers, was notified and she arrived several minutes later.

20.) After being informed about the situation LT. Smothers called to have Plaintiff transported to the prison hospital.

21.) LT. Smothers also called maintenance workers to come and place a proper, permanent cover over the hole in the floor, which was done shortly thereafter.

22.) After waiting in the C. and D. Tier Lobby area for over an hour LT. Smothers again called for transportation to bring Plaintiff to the prison's hospital.

23.) After the second call was made to have Plaintiff transported to the prison's hospital he remained in the lobby area for about another 30 minutes and then was brought back to his cell to await transportation.

24) At approximately 11:00 a.m. E.M.S. arrived at Plaintiff's cell, examined his ankle and informed Plaintiff that he would be taken to the prison's hospital for treatment.

5.

25.) At approximately 2:15 P.M. Plaintiff was finally transported to the prisons hospital.

26.) Upon arrival at the prisons hospital an X-Ray was taken of Plaintiff's left ankle, and it was determined that his ankle was fractured in two seperate places.

27.) Plaintiff's left leg was placed in a splint and he was admitted into the prisons hospital ward untill he could be seen by an orthopedic specialist to determine the extent of the damage.

28.) Six day's later, on Aug. 11, 2010 Plaintiff was seen by an orthopedic specialist who ordered another set of X-Rays.

29.) This second set of X-Rays confirmed the fact that Plaintiff's ankle was fractured in two places.

30.) It was determined that Plaintiff would not require surgery on his ankle. He was instead placed in a hard cast which would remain on for a six week period.

31.) On August 13, 2010 Plaintiff was discharged from the Prison hospital ward and returned to his living quarters at C.C.R./R.C.

32.) Plaintiff remained in the hard cast for approximately six weeks and then had it removed.

6.

33) Although the fracture plaintiff's ankle healed his ankle has never regained full movement and it retains a permanet swelling that combination of which constantly cause plaintiff physical discomfort, especially after any prolonged standing, or walking.

34) That prior to the plaintiff's leg restraints getting caught in this metal plate beneath the door, which resulted in him seriously injuring himself. Nevertheless, upon information and belief, there have been at least several other incidents where either inmates or prison personels have almost hurt themselves due to said hazard.

35) That upon information and belief, these others individuals (inmates and prison personnel alike) have on at least several different occasions reported the hazard of that door plate to the named defendants herein, only to have said defendants either ignore these prior reports or felt that the hazard was not that serious enough to be fixed.

36.) The plaintiff contends that even if he were to fail in showing any direct evidence to the court's satisfaction, of the defendant's prior

7.

knowlledge about the hazard of the plate beneath that door, and their refusing to fix it. The Court, Plaintiff believe, would still have to find the defendants were aware of the hazard and did not correct it, due to the "objective" recklessness standard -that, is, The fact that the hazard of that door should have been so ovious to defendants that, if not fixed, surely it would be only a matter of time before an inmate seriously hurt himself.

37) Plaintiff submits that all defendants herein intentional subjected him against his will to an unsafe condition when they were all aware of the hazard that that metal plate posed to the inmates in that area, and defendant's failing to correct the problem.

38) Plaintiff filed an official grievance through the prison's A.R.P. process on August, 27, 2010.

39) Plaintiff requested that the hole be properly fixed, and also requested monetary damages.

40.) Plaintiff relief was granted in part at the first step of the A.R.P. process, as to having the hole fixed, and was denied in part as to monetary damages.

8.

41.) Plaintiff Proceeded To The Second Step of The A.R.P. Process where The original decision of The First Step Respondent Was upheld.

## Claims For Relief

### First Cause of Action

42.) The action of all Three named defendants as stated in Paragraphs 34 Through 37 exhibit Their deliberate indifference Towards The Plaintiff's Safety due To Their Knowledge of a clear Safety hazard That They failed To Correct, even Though They all had The authority and Power To do So.

Their deliberate indifference directly contributed To Plaintiff's injury, Therefore violating his eight Amendment Right To be free from Cruel and Unusual Punishment.

### Second Cause of Action

43.) The action of all Three named defendants as stated in Paragraphs 34 Through 37 Violates State Law, and The regulations of The LA. DEPT. of Corrections.

Both State Law and The regulations of The LA. DEPT. of Corrections require That The Safety

9.

and well being of all persons under the care of the State be provided for.

By allowing a known physical danger to remain untreated all three named defendants failed to adequately provide for the Plaintiff's safety.

## Requested Relief

Wherefore, Plaintiff request that the Court grant the following relief.

A.) Issue a declatory Judgement stating that:

1.) All three named defendants violated the United State Constitution and State Law when they were made aware of the danger to inmates that was posed by the improper cover over the hole in the floor, and then failed to have it properly fixed, despite their power to do so. Thus causing the Plaintiff to suffer a significant injury in the form of two ankle fractures.

B: Award compensatory damages in the amount following:

1: $25,000.00 against defendant Robert Butler.
2: $25,000.00 against defendant Gail Smothers.
3: $25,000.00 against defendant Brian Meyers.

10.

C: Award punitive damages in the following amount:
1: $25,000.00 against defendant Robert Butler.
2: $25,000.00 against defendant Gail Smothers.
3: $25,000.00 against defendant Brian Meyer.

D: Grant any other relief as it may appear Plaintiff is entitled to.

Respectfully Submitted,
Kenny Whitmore #86468
Kenny W. Whitmore #86468
Camp. D-Hawk/CCR. 4 L
LA. State Prison
Angola, LA 70712

Date September, 12-2012

/s/ Kenny Whitmore 86468

11.